UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| RICHARD CALVERT GARNETT, ERIC MICHAEL GARNETT, and DEBORAH JEAN GARNETT,<br><br>        Plaintiffs,<br><br>        v.<br><br>CITY OF COEUR D'ALENE, an Idaho municipal corporation, COEUR D'ALENE POLICE DEPARTMENT, COEUR D'ALENE POLICE CHIEF WAYNE LONGO, NICHOLAS KNOLL, SHANE AVRIETT, ERIC PAUL, and TIM HANNA,<br><br>        Defendants. | Case No. 2:09-cv-435-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

Before the Court is Defendants' Motion for Summary Judgment (Dkt. 25). The Court has considered the parties' briefing, and oral argument from hearing on September 9, 2010. For the reasons expressed below, the Court will grant the motion in part, and deny the motion in part.

## BACKGROUND

On the morning of April 1, 2008, Plaintiff Eric Michael Garnett was arrested from his home in Coeur d'Alene where his parents, Plaintiffs Richard Calvert Garnett and

**MEMORANDUM DECISION AND ORDER - 1**

Deborah Jean Garnett, also reside. The basis for Eric Garnett's arrest was a violation of probation, possession of drug paraphernalia, and possession of methamphetamine, stemming from a search of the residence during a probation visit.

The probation visit occurred after Officer Shane Avriett of the Coeur d'Alene Police Department was advised by Officer Tim Hanna that Eric Garnett had not been cooperative during the attempted execution of a search warrant on his aunt's home. *See Garnett Dec.,* Dkt. 30, ¶ 12-14. Based upon that information, Officer Avriett contacted the Kootenai County Misdemeanor Probation Office concerning Garnett. *See Avriett Aff.*, Dkt. 25-4. Garnett's regular probation officer was not available, but another probation officer, Amy Knisely, agreed to go to Garnett's residence to conduct a probation visit. *Id.* Officer Avriett told Knisley that he would go with her to Garnett's residence. *Id.* Avriett also requested that Officer Knoll and Detective Paul assist in the search. When Probation Officer Knisely and Police Officers Avriett, Knoll and Paul searched the house, they found drug paraphernalia. They then arrested Eric Garnett and took him to jail where he was questioned about the drug paraphernalia. *See Garnett Dep.*, Dkt. 25-3 at 7-15.

Eric Garnett remained in jail until July 22, 2008, when he posted bond. *Garnett Dec.*, Dkt. 30, ¶ 14. On December 30, 2008, in an oral ruling, Judge Lansing Haynes of Kootenai County State Court granted Eric Garnett's Motion to Suppress, finding that the April 2008 search of the Garnett home was illegal. *See Trans. of Decision,* Dkt. 31-3. At the December 30, 2008 hearing, Judge Haynes dismissed the criminal charges against

Eric Garnett for probation violation, and possession of controlled substance and drug paraphernalia. *Id.*

Plaintiffs brought this lawsuit on September 2, 2009, alleging constitutional violations under 42 U.S.C. § 1983, resulting from the April 2008 search, and Eric Garnett's arrest and detention.

## STANDARD OF LAW

One of the principal purposes of summary judgment "is to isolate and dispose of factually unsupported claims . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). It is "not a disfavored procedural shortcut," but is instead the "principal tool[ ] by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources." *Id.* at 327. "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

The evidence must be viewed in the light most favorable to the non-moving party, and the Court must not make credibility findings. *Id.* at 255. Direct testimony of the non-movant must be believed, however implausible. *Leslie v. Grupo ICA*, 198 F.3d 1152, 1159 (9th Cir. 1999). However, the Court is not required to adopt unreasonable inferences from circumstantial evidence. *McLaughlin v. Liu*, 849 F.2d 1205, 1208 (9th Cir. 1988).

**MEMORANDUM DECISION AND ORDER - 3**

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001)(en banc). To carry this burden, the moving party need not introduce any affirmative evidence (such as affidavits or deposition excerpts) but may simply point out the absence of evidence to support the nonmoving party's case. *Fairbank v. Wunderman Cato Johnson,* 212 F.3d 528, 532 (9th Cir.2000). This shifts the burden to the non-moving party to produce evidence sufficient to support a jury verdict in her favor. *Id.* at 256-57. The non-moving party must go beyond the pleadings and show "by her affidavits, or by the depositions, answers to interrogatories, or admissions on file" that a genuine issue of material fact exists. *Celotex,* 477 U.S. at 324.

The Court is "not required to comb through the record to find some reason to deny a motion for summary judgment." *Carmen v. San Francisco Unified Sch. Dist.,* 237 F.3d 1026, 1029 (9th Cir.2001) (quoting *Forsberg v. Pac. Northwest Bell Tel. Co.*, 840 F.2d 1409, 1418 (9th Cir. 1988)). Instead, the "party opposing summary judgment must direct [the Court's] attention to specific triable facts." *Southern California Gas Co. v. City of Santa Ana*, 336 F.3d 885, 889 (9th Cir. 2003). Statements in a brief, unsupported by the record, cannot be used to create an issue of fact. *Barnes v. Independent Auto. Dealers*, 64 F.3d 1389, 1396 n.3 (9th Cir. 1995). The Circuit "has repeatedly held that documents which have not had a proper foundation laid to authenticate them cannot support a motion for summary judgment." *Beyene v. Coleman Sec. Services, Inc.,* 854 F.2d 1179, 1182 (9th Cir.1988).

**MEMORANDUM DECISION AND ORDER - 4**

**ANALYSIS**

Defendants move for summary judgment and dismissal of Plaintiffs' Complaint in its entirety. In their Complaint, Plaintiffs raise First, Fourth, Fifth, and Fourteenth Amendment claims against Defendants under 42 U.S.C. § 1983. Defendants contend that dismissal is appropriate because the undisputed facts fail to support violations of Plaintiffs' constitutional rights, and because of applicable immunities.

**1.     Fourth Amendment Claim**

To state a claim under § 1983, the plaintiff must (1) establish the deprivation of a right secured by the U.S. Constitution or federal law and (2) establish that the deprivation was committed by a person acting under color of state law. *Amer. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999). The parties do not dispute that Defendants were acting under color of state law, the second element of a § 1983 claim. Regarding the first element, Defendants contend that Plaintiffs cannot show deprivation of a Fourth Amendment right. According to Defendants, the totality of circumstances establish that the officers had probable cause to arrest Eric Garnett following a search of his home. In so arguing, Defendants focus on evidence found during the officers' search of Plaintiffs' home, but ignore whether the search was itself valid.

In support of their motion, Defendants rely heavily upon *Griffin v. Wisconsin,* 483 U.S. 868 (1987). However, that decision is of little assistance to the Defendants. Under *Griffin*, the search of a probationer's home is "reasonable" within the meaning of the Fourth Amendment if it is conducted pursuant to valid state regulations, even if the

**MEMORANDUM DECISION AND ORDER - 5**

regulations adopt a lesser standard than probable cause to justify the search. *Griffin v. Wisconsin*, 483 U.S. 868, 880 (1987) (concluding that Wisconsin's "reasonable grounds" standard for searching a probationer's home satisfied the requirements of the Fourth Amendment). Defendants here have not provided the Court with any state regulation prescribing the circumstances when a probation officer's search for contraband at a probationer's home will be permitted. Rather, they simply suggest that because Garnett was on probation, a search conducted as part of a probation home visit – although the home visit was clearly orchestrated by the police to justify the search – is justified. That suggestion unquestionably exceeds the Supreme Court's holding in *Griffin*.

More relevant to the facts here is the Supreme Court's decision in *U.S. v. Knights*, 534 U.S. 112 (2001). In *Knights*, the Court determined that a warrantless search of a probationer, supported by reasonable suspicion and authorized by a condition of probation, is "reasonable" under the Fourth Amendment. *Id.* at 122. Here, there is no question but that Garnett's conditions of probation included a provision that he "[s]ubmit readily to searches of his person, personal effects, vehicle, residence and/or any accessible property without a warrant, pursuant to probation supervision, at the request of the Probation Office or Law Enforcement." *See Supervised Probation Order*, Dkt. 32-1 at 8. Thus, the only remaining question is whether the officers had reasonable suspicion that Garnett was engaged in criminal behavior or that contraband would be found at his residence.

The Defendants have failed to show that the police had any basis for believing that

**MEMORANDUM DECISION AND ORDER - 6**

Garnett was engaged in ongoing criminal activity, or that contraband related to such activity might be found at his residence. Defendants acknowledge that the search of the Garnett home by Officers Knoll, Avriett, and Paul was based solely on a report by Officer Hanna that Eric Garnett had been uncooperative during an earlier police of Eric Garnett's aunt's home. *Defs.' Statement of Facts*, Dkt. 25-2, ¶ 4. However, according to Eric Garnett's characterization of the situation – which the Court must accept as true for purposes of this motion – his alleged uncooperative behavior involved informing his aunt that she had a right to look at a copy of the warrant to search her home and to be present during the search. *Garnett Dec.*, Dkt. 30, ¶ 10.

Even if the Court were to accept Officer Hanna's characterization of the events, it amounts to nothing more than Garnett encouraging his aunt to be "uncooperative" with police, and implying "that the police department was 'shady.'" *Hanna Aff.*, Dkt. 32-2, ¶¶ 11-12. Perhaps such actions would have justified the probation department in filing a probation violation against him based upon the condition of his probation which required that he be cooperative with law enforcement. However, any such probation violation was completed days earlier. It did not establish "reasonable suspicion " that he was engaged in ongoing criminal activity, that he was engaged in some type of ongoing probation violation, or that contraband might be found at his residence.

The Court finds that Defendants lacked sufficient grounds to conduct a search of Plaintiffs' home. Indeed, state court Judge Lansing Haynes granted Plaintiff's motion to suppress the evidence in his criminal case, finding that the search of his home was

**MEMORANDUM DECISION AND ORDER - 7**

unreasonable.  *Trans. of Decision.*, Dkt. 31-3 at 8.  Defendants have not shown that summary judgment as to Plaintiffs' Fourth Amendment claim is appropriate.  Thus the motion to dismiss Plaintiff's Fourth Amendment claim will be denied.

**2.     Malicious Prosecution Claim**

Defendants also seek dismissal of Plaintiffs' state law and § 1983 malicious prosecution claims.[1]  The elements of a malicious prosecution constitutional claim are as follows: (1) "that defendants prosecuted [plaintiff] with malice," (2) "without probable cause," and (3) "that they did so for the purpose of denying [him] equal protection or another specific constitutional right."  *Awabdy v. City of Adelanto*, 368 F.3d 1062, 1066 (9th Cir. 2004) (internal citation omitted).  "Malicious prosecution actions are not limited to suits against prosecutors but may be brought . . . against other persons who have wrongfully caused the charges to be filed."  *Id.* at 1066.  In Idaho, elements necessary for a state law malicious prosecution claim are: (1) a prosecution; (2) that ended in favor of the plaintiff; (3) in which defendant was the prosecutor; (4) who acted with malice; (5) and without probable cause; and (6) damages resulted.  *Shannahan v. Gigray*, 962 P.2d 1048, 1051 (Idaho 1998).

Malice in the malicious prosecution setting is a focus on the intent or state of mind of the party initiating the prosecution, while probable cause is a focus on the party's

---

[1] While Plaintiffs indicated that they oppose the Defendant's motion for summary judgment on all grounds, they provide no legal argument or analysis on the state law malicious prosecution claim in their 2-page brief.  The Court nevertheless must conduct its own analysis of whether summary judgment is appropriate.

**MEMORANDUM DECISION AND ORDER - 8**

knowledge.  *Estate of Tucker v. Interscope Records*, 515 F.3d 1019, 1030-31 (9th Cir. 2008).  Therefore, "[t]he probable cause inquiry is objective, asking whether a reasonable person would have thought that the claim was legally tenable "without regard to [her] mental state," while the malice inquiry focuses on "the subjective mental state of the defendant in instituting the prior action."  *Id*. at 1031 (internal citations and punctuation omitted).

Defendants here argue that there is no evidence of malice by the Defendant police officers, and that the record supports that the officers had probable cause.   The burden then shifts to Plaintiffs to present evidence of genuine issues to be presented to a trier of fact.

Plaintiffs assert that, given the facts in the record, no reasonable officer could have concluded that he or she had probable cause to search Plaintiffs' residence.  The Court agrees.  Because the search resulted in the seizure of evidence that formed the basis for Plaintiff Eric Garnett's arrest, the Court finds that the absence of probable cause element for a malicious prosecution claim is satisfied.

With respect to the element of malice, the Court's analysis is less straight-forward, in large part because of Plaintiffs' failure to address the issue in their brief.  As noted above, the burden is on Plaintiffs to go beyond the pleadings and show through affidavits and other discovery that a genuine issue of material fact exists.  *Celotex,* 477 U.S. at 324.  The Ninth Circuit has held that the Court need not "comb through the record to find some reason to deny a motion for summary judgment."  *Carmen,* 237 F.3d at 1029 (citation

omitted).  Instead, Plaintiffs – as the non-moving party – have the burden of directing the Court to "specific triable facts."  *Southern California Gas,* 336 F.3d at 889.

Eric Garnett contends, in his affidavit, that he was polite and cooperative with police, but that police officers testified to the contrary in his criminal proceedings.  This evidence may raise an inference, ever so slight, that the police officers acted with malice in initiating their search of Plaintiffs' home.  However, for Plaintiffs' malicious prosecution claim, Defendants must have wrongfully caused the criminal charges to be filed against Eric Garnett.  The Plaintiffs have completely failed to meet his burden of showing evidence that the officers were instrumental in having the criminal charges brought against him.  Accordingly, summary judgment as to Plaintiffs' malicious prosecution claim will be granted.

### 3.    Wrongful Incarceration

Defendants' sole basis for arguing that Plaintiffs' wrongful incarceration claim should be dismissed is that the evidence supports the police officers' determination that they had probable cause for the search of Plaintiffs' residence.  As discussed above, the Court finds that a reasonable jury could conclude that the officers lacked probable cause.  Thus, summary judgment as to Plaintiffs' wrongful incarceration claim will be denied.

### 4.    Official Capacity Immunity

The United States Supreme Court has determined that the Eleventh Amendment prohibits litigants from bringing suits for monetary damages against states, state agencies, and state officials acting in their official capacity.  *Puerto Rico Aqueduct & Sewer Auth.*

**MEMORANDUM DECISION AND ORDER - 10**

*v. Metcalf & Eddy, Inc.*, 506 U.S. 139 (1993). As a result, states and state actors are not considered 'persons' under the provisions of §1983. *Hafer v. Malo*, 502 U.S. 21, 26 (1991). Suits against state actors "acting in their official capacities" are actually suits against the state, and are barred by the Eleventh Amendment, unless prospective injunctive relief is requested. Where as here, a plaintiff is seeking monetary damages against a state official, the Court construes the complaint as an individual capacity suit because an official capacity suit for damages would be barred. *See Cerrato v. San Francisco Community College Dist.*, 26 F.3d 968, 973 n.16 (9th Cir. 1994).

Individual capacity suits "seek to impose personal liability upon a government official for actions he takes under color of state law." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985). "A victory in such a suit is a 'victory against the individual defendant, rather than against the entity that employs him,'" and "[t]hus, the Eleventh Amendment prohibition against monetary damages imposed on a state does not apply. . . ." *Cerrato*, 26 F.3d at 973. The question is then whether Defendants are entitled to qualified immunity from suit in their individual capacities.

5.  **Qualified Immunity**

In § 1983 actions, the doctrine of qualified immunity protects state officials from personal liability for on-the-job conduct so long as the conduct is objectively reasonable and does not violate clearly-established federal rights. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (citations omitted). A state official may be held personally liable in a § 1983 action if he knew or should have known that he was violating a plaintiff's clearly-

**MEMORANDUM DECISION AND ORDER - 11**

established federal rights. *Id*. True to its dual purposes of protecting state actors who act in good faith, and redressing clear wrongs caused by state actors, the qualified immunity standard "gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991).

A qualified immunity analysis consists of two prongs: (1) whether the facts as alleged by plaintiff establish a violation of a constitutional right, and (2) whether that right was clearly established given the state of the law at the time of the alleged misconduct. *Pearson v. Callahan*, 129 S.Ct. 808, 815-16 (2009), *citing Saucier v. Katz*, 533 U.S. 194, 201 (2001). Courts may "exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id.* at 818.

With respect to the first prong, and as discussed above, this Court finds – for purposes of this motion – that Defendants violated Plaintiffs' Fourth Amendment rights. The Defendants have failed to show that the officers had "reasonable suspicion" that Garnett was engaged in ongoing criminal activity, that he was engaged in an ongoing probation violation, or that contraband would be found at his residence.

As to the second prong – whether the law was clearly established – such inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Saucier*, 533 U.S. at 201. The Court must consider the "objective legal reasonableness of the action, assessed in light of the legal rules that were clearly

established at the time it was taken." *Pearson*, 129 S.Ct. at 822, *quoting Wilson v. Layne*, 526 U.S. 603, 614 (1999). In other words, should a reasonable officer have known that his conduct was unlawful in the circumstances.

The holding in *Knights*, that a warrantless search of a probationer, supported by reasonable suspicion and authorized by a condition of probation, is permitted by the Fourth Amendment, was well-established at the time of the incident here. As discussed above, the police and the probation department did not have such a reasonable suspicion that evidence of criminal activity or a probation violation would be uncovered by such a search. The Court concludes that no reasonable officer could have believed otherwise.

The Supreme Court has recognized that "it is inevitable that law enforcement officials will in some cases reasonably but mistakenly conclude that probable cause is present, and we have indicated that in such cases those officials – like other officials who act in ways they reasonably believe to be lawful – should not be held personally liable." *Anderson v. Creighton*, 483 U.S. 635, 641 (1987). However, there is such a gap between the facts which the police relied upon – Garnett's supposed failure to cooperate with the police – and the completely unrelated search which they undertook, that the Court must conclude that no police officer could reasonably have concluded that they had satisfied the standard prescribed by the Supreme Court in *Knights*.

6.   **No Respondeat Superior Liability for Defendant Longo**

Liability under § 1983 arises only upon a showing of personal participation by the defendant. *Fayle v. Stapley*, 607 F.2d 858, 862 (9th Cir.1979). A supervisor is only

**MEMORANDUM DECISION AND ORDER - 13**

liable for constitutional violations of his subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them; there is no respondeat superior liability under § 1983. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Although Plaintiffs have asserted constitutional claims involving personal participation by Defendants Knoll, Avriett, Paul, and Hanna, Plaintiffs have failed to assert personal participation by Defendant Longo. Accordingly, claims against Longo will be dismissed.

7.      **Action Against a Municipality**

In order to proceed against the City of Coeur d'Alene under § 1983, Plaintiffs must state facts meeting the test articulated in *Monell v. Dep't of Social Services of City of New York*, 436 U.S. 658, 691-94 (1978). Under *Monell*, requisite elements of a § 1983 claim against a municipality performing a state function are the following: (1) the plaintiff was deprived of a constitutional right; (2) the municipality or entity had a policy or custom; (3) the policy or custom amounted to deliberate indifference to plaintiff's constitutional right; and (4) the policy or custom was the moving force behind the constitutional violation. *See Mabe v. San Bernardino County, Dep't of Pub. Soc. Servs.*, 237 F.3d 1101, 1110-11 (9th Cir. 2001). An unwritten policy or custom must be so "persistent and widespread" that it constitutes a "permanent and well settled city policy." *Monell*, 436 U.S. at 691. "Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency, and consistency that the conduct has become a traditional method of carrying out policy."

**MEMORANDUM DECISION AND ORDER - 14**

*Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996) (citations omitted).

Here, there is no evidence that a policy or custom of the City of Coeur d'Alene caused the constitutional violations at issue. The Complaint identifies specific incidents involving Plaintiffs, but demonstrates no pattern or practice of particular conduct. Accordingly, summary judgment as to the claims against the City of Coeur d'Alene will be granted.

As noted in Defendants' motion, the Coeur d'Alene Police Department is not itself a legal entity, but is part of the official entity of the City of Coeur d'Alene. *Weathers Aff.*, Dkt. 25-5, ¶ 3. Accordingly, the Coeur d'Alene Police Department is considered the City of Coeur d'Alene, and will also be dismissed from this action.

## ORDER

**IT IS ORDERED:**

1. Defendants' Motion for Summary Judgment (Dkt. 25) is GRANTED in part and DENIED in part.

2. Plaintiffs' claims as to the City of Coeur d'Alene Police Department, City of Coeur d'Alene, and Defendant Longo are dismissed with prejudice. As to these claims, Defendants' motion is GRANTED.

3. Plaintiffs' claims as to Defendants Knoll, Avriett, Paul, and Hanna in their individual capacities remain. Defendants' motion as to claims against these Defendants in their individual capacities is DENIED.



DATED: **October 12, 2010**

_____
Honorable B. Lynn Winmill
Chief U. S. District Judge

**MEMORANDUM DECISION AND ORDER - 16**